TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN S. GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2426
     Facsimile: (213) 894-0142
     E-mail: Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>10.2 BITCOIN DIGITAL CURRENCY HELD IN A DIGITAL WALLET ENDING '4EMK,<br><br>        Defendant. | NO. 2:21-cv-7457<br><br><u>VERIFIED COMPLAINT FOR FORFEITURE</u><br><br>18 U.S.C. § 981(a)(1)(A) & (C)<br><br>[U.S.S.S.] |

The United States of America brings this claim against the defendant 10.2 Bitcoin digital currency held in a digital wallet ending '4emK, and alleges as follows:

**JURISDICTION AND VENUE**

1. This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a)(1)(A)&(C).

2. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this District pursuant to 28 U.S.C. § 1395(a).

**PERSONS AND ENTITIES**

4. The plaintiff is the United States of America (the "plaintiff" or the "government").

5. The defendant is 10.2 Bitcoin digital currency (the "Defendant Currency"), restrained by agents of the United States Secret Service ("USSS") on or about June 10, 2021 pursuant to a seizure warrant issued by the Hon. Alka Sagar.

6. The Defendant Currency is currently held in a digital wallet with a public address ending '4emK (as described further below) in the custody and control of Huobi Global ("Huobi"),[1] where the Defendant Currency shall remain subject to this Court's jurisdiction pending the resolution of this action.

7. The interests of victim G.R. (as described further herein), and UI-1 (as described further herein), may be adversely affected by these proceedings.

---

[1] The United States Secret Service has requested that Huobi place a hold on the '4emK wallet due to its connection with the scheme described herein, which Huobi has agreed to do. At the time of the request, the '4emK wallet contained 10.2 Bitcoin digital currency.

2

**EVIDENCE SUPPORTING FORFEITURE**

*Background on Digital Currency*

8. Digital currency (also known as cryptocurrency or virtual currency)[2] is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e., currency created and regulated by a government). Digital currencies exhibit properties similar to other currencies, but do not have a physical form, existing entirely on the internet. Digital currency is not issued by any government or bank (in contrast with "fiat" or conventional currencies) and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Digital currency is legal in the United States and accepted for legitimate financial transactions. However, it is also often used for conducting illegal transactions or for concealing or disguising the true nature, source, location, ownership or control of illegally obtained criminal proceeds. Bitcoin is one of the most commonly used and well-known digital currencies.

9. A digital currency exchanger (an "exchanger") is a business that allows customers to trade digital currencies for other digital or fiat currencies. An exchanger can be a brick-and-mortar business, or strictly an online business. Both brick and mortar and online exchangers accept a wide variety of digital currencies, and exchange them for fiat and traditional payment methods, other digital currencies, or transfers between digital currency owners. Most exchangers are located outside the boundaries of the United States in

---

[2] For purposes of this affidavit, the terms "digital currency," "cryptocurrency," and "virtual currency" are used interchangeably and address the same concept.

3

order to avoid regulation and legal requirements, but the largest and most popular exchanger is "Coinbase," which operates inside the jurisdiction of the United States. Huobi Global is one such popular exchanger.

10. Tokens are a form of digital asset that function similar to a digital currency. Tokens are generally created by an issuing company and then used like currency by and within companies including the issuer, but are generally distinct from other blockchain-based cryptocurrencies such as Bitcoin.[3] Digital tokens are often issued by companies attempting to launch a new digital product or digital service, where investors purchase tokens for cash and expect that they will exchange these tokens at a later date for greater value if the issuer is successful. While tokens can be used as a limited form of payment, these tokens officially remain the property of the issuer, which often will maintain technical tools that can restrict such tokens from being transferred further. In this way, a token may be analogized to a voucher or I-O-U, in that they are not specifically a currency, but represent value and may be exchanged at that value. Many tokens can be bought and transferred within certain exchangers, such as Coinbase or Huobi.

11. One popular and commonly used token is "Tether," a token issued by Tether Limited. Tether is a decentralized, peer-to-peer

---

[3] A blockchain is a growing list of records, called blocks, linked using cryptography. It is a decentralized, distributed and public digital ledger that is used to record transactions across many computers in a way that the record can't be altered retroactively without additionally changing all successive blocks and the consent of the network. Blockchain is a method to record transactions that provides high security by design: transactions are verified with advanced cryptography and spread across many computers in a peer-to-peer network or distributed ledger.

4

form of digital currency having no association with banks or governments. Users purchase Tether tokens, which are stored in a user's digital or cryptocurrency wallet (a "wallet"). Tether is generally considered a "stablecoin," meaning that Tether is intended to closely approximate the value of the U.S. Dollar, and thus can act as a digital currency store of value similar to the U.S. Dollar. For this reason, cryptocurrency traders, both legitimate and illegitimate, will often convert other digital currencies into Tether for temporary or long-term storage, as by design, Tether typically does not experience the dramatic swings in value seen in other digital currencies.

12. A wallet is identified by unique electronic addresses that essentially stores the access code that allows an individual to conduct transactions on the public ledger. To access a wallet on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to an account number while the private address is similar to a password used to access that account. Even though the public address of those engaging in digital currency transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public address are not recorded. If a real individual or entity is linked to a public address, however, it may be possible to determine what transactions were conducted by that individual or entity. Therefore, digital transactions are often described as "pseudonymous," meaning they are partially anonymous. Most individuals are identified when they use a digital currency exchanger to make a transaction between digital currency and fiat, or

through digital currency exchangers that voluntarily or through legal order, cooperate with law enforcement.

### *Background on Victim G.R.*

13. G.R. is a resident of, and at all relevant times did business within, Orange County, California, within the Central District of California.

14. G.R. controls an investment vehicle which invests in digital currencies, including Bitcoin ("BTC").

15. Through this investment vehicle, G.R. maintained one or more digital currency wallets with Coinbase, a popular digital currency exchanger.

16. G.R.'s wallets at Coinbase included a "Coinbase Pro" wallet, which is a type of wallet offered by Coinbase (hereinafter, the "Victim Account").

### *G.R. is Defrauded by Persons Unknown*

17. On or about April 19, 2021, G.R. conducted a test purchase of 0.01 BTC in the Victim Account.

18. After completing the test purchase, G.R. conducted a larger purchase of 200 BTC in the Victim Account.[4] Due to the size of the purchase, the purchase did not appear in the Victim Account until mid-day on April 20, 2021.

19. Shortly after the transaction completed successfully, and while using their computer, G.R. received an online notification, which appeared to be from Coinbase, indicating that the Victim Account had been locked and requesting that they contact Coinbase regarding their recent large transaction.

---

[4] At the time of the transaction 200 BTC was worth roughly $11.275 million USD.

20. Based on their recent significant purchase of 200 BTC in the Victim Account and the apparent notice from Coinbase, G.R. contacted the number provided in the notice and spoke with an unidentified individual claiming to be representative of Coinbase ("UI-1").

21. During the conversation, UI-1 stated to G.R. that their Coinbase account was locked due to the size of the transaction, and in order to allow the purchase to go through, G.R. would need to increase the transaction limits on the Victim Account. UI-1 also purported to offer G.R. access to Coinbase Prime, a program for large transaction amount users that reduces the fees and taxes applied to Coinbase transactions.[5]

22. Based on these statements by UI-1, G.R. then allowed UI-1 to connect to their computer utilizing a remote desktop service called GoToAssist.[6]

23. Through GoToAssist, UI-1 connected with G.R.'s computer and requested G.R. connect to their Coinbase account utilizing their username and password, which G.R. did. Once granted access to the Victim Account, UI-1 increased the daily transaction limit and also attempted to deactivate certain notifications and alert settings on the Victim Account.

---

[5] Coinbase Prime is a legitimate service offered by Coinbase that offers additional features not found in normal Coinbase or Coinbase Pro accounts such as the Victim Account.

[6] A remote desktop service is often utilized as a legitimate way to connect to a computer or server when the user is not able to connect to the actual computer. It can also be used by IT service professionals to diagnose and repair problems arising on a customer or employee's computer without physically being present in front of the computer experiencing the issues.

24. In fact, the Victim Account had not been frozen, and UI-1 was not a representative of Coinbase. UI-1's actions increasing the daily transaction limit on the Victim Account were simply a ruse used by UI-1 to provide the appearance of legitimacy and deter G.R.'s suspicion. In fact, G.R.'s earlier purchase of 200 BTC was complete, and no increase in the transaction limit was necessary. Similarly, the attempted disabling of notifications would allow transactions to be completed in the Victim Account without G.R. receiving notice of any such transactions.

25. Following these changes, UI-1 stated to G.R. that their funds would be transferred from their Coinbase Pro wallet (the Victim Wallet) to a new Coinbase Prime wallet. After roughly two hours, approximately 206 BTC was transferred from the Victim Account to what G.R. believed would be a new Coinbase Prime wallet (hereinafter, the "Victim Funds").

26. In fact, UI-1's representations were false, and the Victim Funds were not transferred to any new wallet belonging to G.R. at Coinbase. In fact, on or about April 20, 2021 at 2:02:40 PST, the Victim Funds were sent from the Victim Account to a wallet not held at Coinbase and not known to G.R., with a public address ending 'Fh5Ce.

27. Shortly thereafter, between 2:06:23 PST and 2:12:41 PST on April 20, 2021, several additional transactions were conducted in the Victim Account without G.R.'s authorization, resulting in the sale of XLM digital currency[7] which had been held in the Victim Account and a

---

[7] XLM is a digital currency commonly referred to as "stellar."

corresponding purchase of BTC, followed by the immediate transfer of 1.538342 BTC to a wallet with the address ending 'BkTk6.

28. G.R. realized something was wrong when they received two email notifications advising them that further transactions had been conducted with other digital currencies and funds held in other of G.R.'s Coinbase wallets.[8]

29. The total value of virtual currency transferred out of the Victim Account between 2:02:40 PST and 2:12:41 PST on or about April 20, 2021 without G.R.'s authorization was approximately $11,570,138.

### *Tracing the Defendant Currency*

30. In order to conceal their source, the Victim Funds were then broken up and moved through multiple smaller transactions before being reassembled in other wallets, where the bulk of the Victims Funds remain. Attached as Exhibit A is a summary chart documenting this series of transfers.[9]

31. Along with this series of transfers identified in Exhibit A, at least 10.2 BTC of the Victim Funds were deposited into a wallet ending '4emK held by Huobi (the Defendant Currency), where these funds remain.

32. On or about June 10, 2021 the Hon. Alka Sagar issued a seizure warrant for the Victim Funds.

---

[8] UI-1's efforts to disable notifications on G.R.'s Coinbase accounts appears to have been only partially successful, possibly because UI-1 either failed to disable notifications for some of G.R.'s digital wallets or failed to disable all notifications.

[9] In accordance with Federal Rule of Civil procedure 5.2(a) and LR 5.2, the wallet numbers identified on Exhibit A have been redacted.

9

**FIRST CLAIM FOR RELIEF**

18 U.S.C. § 981(a)(1)(A)

33. Based on the foregoing, the government alleges that the Defendant Currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 & 1957 (relating to money laundering), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. §§ 1030 and 1343. The Defendant Currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**SECOND CLAIM FOR RELIEF**

18 U.S.C. § 981(a)(1)(C)

34. Based on the facts set out above, Plaintiff alleges that the Defendant Currency constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 1030 (fraud and related activity in connection with computers) and 1343 (wire fraud). The Defendant Currency is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

//
//
//

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the Defendant Currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the Defendant Currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: September 17, 2021

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN S. GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

　/s/
DAN G. BOYLE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>VERIFICATION</u>

I, PATRICK LEIGHTON, hereby declare that:

1. I am a Special Agent of the United States Secret Service and the case agent for the forfeiture matter entitled *United States of America v. 10.2 Bitcoin Digital Currency Held in a Digital Wallet Ending '4emK.*

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed September _17_, 2021 in _Los Angeles_, California.

*Patrick Leighton* (Digitally signed by Patrick Leighton, Date: 2021.09.17 11:17:33 -07'00')

PATRICK LEIGHTON
Special Agent
United States Secret Service